EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Ángel L. Hernández Díaz<br><br>Peticionario | Certiorari<br><br>2026 TSPR 71<br><br>218 DPR ___ |

Número del Caso: CC-2023-0270


Fecha: 30 de junio de 2026


Tribunal de Apelaciones:

    Panel I


Representante legal de la parte peticionaria:

    Lcdo. Luis A. Gutiérrez Marcano
    Sociedad para Asistencia Legal


Oficina del Procurador General:

    Hon. Fernando Figueroa Santiago
    Procurador General

    Lcda. Liza M. Delgado González
    Procuradora General Auxiliar


Materia: Sentencia con Opiniones de conformidad.



Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                    CC-2023-0270

Ángel L. Hernández Díaz

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

Se revocan los dictámenes recurridos en el presente caso y se ordena eliminar la información del Sr. Ángel L. Hernández Díaz del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite una Opinión de conformidad a la cual se unen el Juez Asociado señor Martínez Torres, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Colón Pérez. El Juez Asociado señor Estrella Martínez emite una Opinión de conformidad. La Jueza Asociada Rivera Pérez emite una Opinión de conformidad a la cual se le une el Juez Asociado señor Candelario López. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón disienten sin opinión escrita.

                    Javier O. Sepúlveda Rodríguez
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

        v.                      CC-2023-0270

Ángel L. Hernández Díaz

     Peticionario

La Jueza Presidenta ORONOZ RODRÍGUEZ emite una Opinión de conformidad a la cual se le unen el Juez Asociado señor Martínez Torres, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Colón Pérez

En San Juan, Puerto Rico a 30 de junio de 2026.

Nos compete resolver si los foros inferiores erraron al dictaminar que no procedía eliminar la información del Sr. Ángel L. Hernández Díaz (señor Hernández Díaz) del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores (Registro). Tras considerar la normativa relevante, estoy conforme con recovar los dictámenes recurridos y eliminar su información del Registro.

**I.**

El 8 de febrero de 2006 el Ministerio Público presentó cuatro acusaciones contra el señor Hernández Díaz por infringir el Artículo 105 (actos lascivos o impúdicos) del Código Penal de Puerto Rico de 1974, Ley

Núm. 115 del 22 de julio de 1974, según enmendada,33 LPRA ant. sec. 4067.[1] Como parte de las acusaciones, el Ministerio Público alegó que, al momento de los hechos, la víctima era una menor de catorce años.

Luego de varios incidentes procesales, el señor Hernández Díaz hizo una alegación de culpabilidad por las cuatro acusaciones del delito de actos lascivos. Sin embargo, como parte del preacuerdo con el Ministerio Público, se eliminó el elemento de minoridad de la víctima. El 7 de julio de 2006 el Tribunal de Primera Instancia dictó una *Sentencia* en su contra por los cuatro cargos y se le impuso una pena de diez años, a cumplirse de forma concurrente mediante el beneficio de sentencia suspendida. Además, como parte de la *Sentencia*, se ordenó a que cumpliera con las disposiciones de la Ley Núm. 266-2004, conocida como la *Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores,* 4 LPRA sec. 536 *et seq.* (Ley Núm. 266-2004), lo cual significó ingresar su información personal en el Registro.

Tras el señor Hernández Díaz extinguir su *Sentencia*, el Departamento de Corrección y Rehabilitación emitió un *Certificado de Expiración de Sentencia* en el cual certificó que este había sido puesto en libertad a prueba el 7 de julio de 2006 y que dicho periodo finalizó el 7 de julio de 2016.

Así las cosas, el 5 de octubre de 2022 el señor Hernández Díaz presentó ante el Tribunal de Primera Instancia una moción

---

[1] Los hechos que dieron base a las acusaciones se cometieron en los años 2002 y 2003.

mediante la cual solicitó eliminar su información personal del Registro. Adujo que la Ley Núm. 28-1997, 4 LPRA ant. sec. 535 *et seq.* (ed. 2003), vigente al momento en que ocurrieron los hechos que dieron paso al proceso penal, establecía que una persona debía permanecer en el Registro por un periodo de diez años desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba y que este término ya había vencido. Señaló, además, que la enmienda a la Ley Núm. 266-2004, establecida mediante la más reciente Ley Núm. 243-2011, 4 LPRA sec. 536 *et seq.,* no incluyó la obligación del convicto de estar en el Registro por el delito de actos lascivos contra una persona adulta, sino que está limitado a cuando se comete el delito de actos lascivos en contra de un menor. Por lo anterior, arguyó que tenía derecho a que se eliminara su información personal del Registro, por haberse excluido la minoridad de la víctima en la alegación preacordada.

Después de considerar la solicitud del señor Hernández Díaz, el Tribunal de Primera Instancia emitió una *Orden* en la cual denegó el petitorio.

Insatisfecho, el señor Hernández Díaz presentó un recurso de *Certiorari* ante el Tribunal de Apelaciones mediante el cual reiteró sus argumentos. El Ministerio Público, por conducto de la Oficina del Procurador General, presentó un *Escrito en cumplimiento de orden* en el que arguyó que la ley que aplicaba al caso de autos era la Ley Núm. 243-2011 y que el señor Hernández Díaz debía permanecer inscrito de por vida por ser un Ofensor Sexual Tipo III. Esto así,

pues resultó convicto por el delito de actos lascivos y su víctima, como cuestión de hecho, era menor de edad.

Analizados los escritos de las partes, el foro apelativo intermedio notificó una *Resolución* en virtud de la cual denegó expedir el auto.

Finalmente, el señor Hernández Díaz presentó el recurso de *Certiorari* que nos ocupa. En este, replanteó los argumentos que había esbozado ante los foros inferiores, es decir: (1) que la Ley Núm. 243-2011 no incluye el delito de actos lascivos sin el elemento de minoridad y (2) que ya cumplió con el término de diez años impuestos por la ley aplicable a su caso, sea la vigente al momento en que ocurrieron los hechos o la vigente al momento en que se le acusó. De otra parte, la Oficina del Procurador General presentó su alegato, en el que arguyó que la Ley Núm. 266-2004: (1) incluye el delito de actos lascivos, aunque la víctima sea mayor de edad, y (2) requiere que el término de inscripción de diez años se cuente desde que cumplió la condena, lo cual, en este caso, sería hasta el 7 de julio de 2026.

Contando con la comparecencia de las partes, resolvemos.

**II.**

La Ley Núm. 28-1997 estableció por primera vez en Puerto Rico el *Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores*. Esta medida se aprobó en cumplimiento con el estatuto federal *Jacob Watterling Crimes Against Children and Sexually Violent Offender Registration Program*, 42 USC sec. 14071 *et seq.*, el cual requirió a los

estados, y a Puerto Rico, adoptar una legislación para que personas convictas por ciertos delitos de naturaleza sexual y de abuso contra menores de edad tuvieran que inscribirse en un registro público.

En particular, el Artículo 3 de la Ley Núm. 28-1997, 4 LPRA ant. sec. 535(a) (ed. 2003), ordenaba la inscripción en el Registro de las personas que resultaran convictas por alguno de los siguientes delitos o su tentativa: violación, seducción, sodomía, actos lascivos o impúdicos; proxenetismo, rufianismo o comercio de personas cuando la víctima fuere menor de dieciocho años y el delito agravado; delito contra la protección a menores, incesto, restricción de libertad cuando la víctima fuere menor de dieciséis años y no fuere su hijo o su hija, secuestro cuando la víctima fuere menor de dieciocho años y no fuere su hijo, robo de menores, perversión de menores cuando se admitiere o retuviere a un menor de dieciocho años en una casa de prostitución o sodomía; maltrato agravado de un menor y agresión sexual conyugal, y el delito de maltrato a menores.

Además, el Artículo 5 de la referida ley disponía que la persona convicta se mantendría "en el Registro por un período mínimo de diez (10) años desde que la persona cumpl[iera] la sentencia de reclusión, desde que comenz[ase] a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que [fuese] liberada bajo palabra". 4 LPRA ant. sec. 535c (ed. 2003). Una vez transcurrido ese término, el nombre y los datos de la persona debían eliminarse del Registro. Íd.

Posteriormente, la Ley Núm. 28-1997 se derogó mediante la Ley Núm. 266-2004. En este nuevo estatuto se reafirmaron las consideraciones de política pública que motivaron la adopción de la Ley Núm. 28-1997. Particularmente, la Asamblea Legislativa reiteró que el Estado tenía el deber de "continuar ampliando el marco de acción y adoptar un enfoque de carácter preventivo" mediante la "recopilación y divulgación de información relativa a las personas convictas de delitos sexuales y abuso contra menores". Exposición de Motivos de la Ley Núm. 266-2004 (2004 [Parte 1] Leyes de Puerto Rico 2015). En síntesis, **la Ley Núm. 266-2004 no varió el listado de delitos ni el tiempo durante el cual el Estado debía mantener la información de la persona en el Registro**. A saber, el Artículo 3(a) de la Ley Núm. 266-2004, 4 LPRA ant. sec. 536a, reiteró la obligación de inscribir a las personas convictas por los delitos de actos lascivos o impúdicos.

Sin embargo, **la referida ley modificó el momento a partir del cual se comenzaba a calcular el período de inscripción**. Según el Artículo 5 de la Ley Núm. 266-2004, 4 LPRA ant. sec 536c (ed. 2010), **el periodo de inscripción de diez años para toda persona convicta debía contarse desde que la persona extinguía el término de su sentencia**. Esta disposición omitió la distinción reconocida en el estatuto derogado entre las personas que cumplían su sentencia en una institución penitenciaria y aquellas que lo hacían en la libre comunidad, quienes, bajo la ley anterior, tenían la obligación de

inscribirse en el Registro desde antes de haberse extinguido su sentencia.

Finalmente, la Ley Núm. 243-2011 enmendó la Ley Núm. 266-2004 para atemperarla a la Ley Federal Núm. 109-248 de 27 de julio de 2006, conocida como *Adam Walsh Child Protection and Safety Act of 2006* o *Sex Offender Registration and Notification Act* (SORNA). Esta ley federal impone unas obligaciones mínimas a los estados y territorios de los Estados Unidos. Al adoptar los requisitos mínimos de la ley SORNA, el Artículo 2 de la Ley Núm. 243-2011, *supra,* enmendó la Ley Núm. 266-2004 para establecer tres clasificaciones para los ofensores sexuales basadas en el delito sexual cometido, enmendando de forma sustancial las obligaciones de la persona sujeta al Registro. La clasificación de Ofensor Sexual Tipo I conlleva permanecer en el Registro por quince años; por otro lado, el Ofensor Sexual Tipo II tiene que estar inscrito durante veinticinco años, y el Ofensor Sexual Tipo III debe permanecer inscrito por el resto de su vida. 4 LPRA sec. 536c. Mediante este esquema regulatorio, la Asamblea Legislativa eliminó el término uniforme de diez años que contemplaba anteriormente la ley y lo sustituyó por un término específico, basado en la gravedad de los delitos. 4 LPRA sec. 536.

La Ley Núm. 243-2011 también introdujo ciertas enmiendas a la Ley Núm. 266-2004 con relación al delito de actos lascivos, con el propósito de categorizar a personas convictas por este delito de acuerdo con la edad de la

víctima. Si la víctima era menor de edad, pero no menor de dieciséis años al momento que se cometió el delito, el convicto será catalogado como Ofensor Sexual Tipo II. Íd. Si la víctima no había cumplido los dieciséis años cuando se cometió el delito, el convicto será registrado como un Ofensor Sexual Tipo III. Íd. Dicho esto, la Ley Núm. 266-2004 según enmendada por la Ley Núm. 243-2011, no incluye una categoría de Ofensor Sexual para las personas convictas por el delito de actos lascivos cometido contra una persona mayor de edad.

**III.**

En Pueblo v. Ferrer Maldonado, 201 DPR 974 (2019), este Tribunal se enfrentó a una controversia en la cual se cuestionaba la constitucionalidad de aplicar las disposiciones de la Ley Núm. 266-2004, según enmendada, de manera retroactiva. Una mayoría de este Tribunal aplicó los criterios esbozados por la Corte Suprema de los Estados Unidos en Smith v. Doe, 538 US 84 (2003), es decir,

> (1) si la sanción impuesta se ha considerado históricamente como un "castigo"[…]; (2) si la legislación establece alguna discapacidad o restricción para su implantación; (3) si la medida legislativa aplica a una conducta ya considerada como un delito; (4) si la legislación tiene una relación racional con un propósito no punitivo, y (5) si la medida legislativa resulta excesiva en contraposición a ese propósito no punitivo. Pueblo v. Ferrer Maldonado, *supra*, pág. 992.

Luego de llevar a cabo el examen de rigor, la mayoría resolvió, de manera errada, que la aplicación retroactiva de las enmiendas introducidas por la Ley Núm. 243-2011 a la Ley Núm. 266-2004 no violaban la prohibición constitucional en contra de la aplicación de leyes *ex post facto*. Pueblo v. Ferrer Maldonado, *supra*, pág. 999. Asimismo, concluyó que

> **todas las disposiciones contenidas en las enmiendas introducidas por la Ley Núm. 243-2011 aplican de forma retroactiva**, independientemente de si la persona que impugna su anotación en el Registro arguye que, en su situación particular, corresponde emplear el principio de favorabilidad, conforme a lo resuelto en <u>Pueblo v. Hernández García</u>, 186 DPR 656 (2012). (Negrilla suplida) <u>Íd.</u>

En aquel momento, emití un voto disidente porque, a mi juicio, aplicar retroactivamente la Ley Núm. 243-2011 a los hechos de ese caso agravaría el efecto punitivo de sus disposiciones. En particular, lo que resolvió la mayoría resultó en una inscripción permanente en el Registro, en lugar del término fijo de diez años. Esto tuvo el efecto de empeorar las consecuencias sancionadoras de la convicción de la persona involucrada, violando la prohibición contra las leyes *ex post facto*. Empero, distingo ese caso de la controversia de marras.

Aquí se alega que las enmiendas más recientes a la legislación aplicable -a saber, la Ley Núm. 234-2011- no contemplan el delito por el cual se sentenció al señor Hernández Díaz. Por ello, arguye que, conforme a la legislación actual, no se le debió incluir en el Registro. Es necesario resaltar que las enmiendas que resultaron en la omisión del delito redundarían en un beneficio que favorece al señor Hernández Díaz. Es decir, no resultaría en una carga adicional, pues esta exclusión invalida su inscripción en el Registro. Ante esto, y en cumplimiento con el principio de favorabilidad, concluyo que la Ley Núm. 243-2011 es la pieza legislativa aplicable a la controversia ante nos por ser la más benigna.

Habida cuenta de lo anterior, se recalca que se le imputó al señor Hernández Díaz cometer actos lascivos contra una menor de edad. No obstante, a través de una alegación preacordada, este fue convicto **sin el elemento de minoridad.** De acuerdo con la Ley Núm. 243-2011, un "convicto" para efectos de la obligación de ingresar en el Registro es toda persona convicta por algún delito, sus tentativas o conspiraciones, **según establecidos en esta ley.** Reitero, en primer lugar, que ninguno de los tres tipos de Ofensores Sexuales contemplados en la precitada ley considera el delito de actos lascivos contra una persona adulta.

Por otra parte, el Artículo 3(b) de la Ley Núm. 266-2004, *supra,* expone que serán registradas "[l]as personas convictas que disfruten de libertad bajo palabra, condicionada, **libertad a prueba**, o algún método alterno de cumplimiento de la pena de reclusión, por alguno de los delitos o sus tentativas, según enumerados en el Artículo 2 de esta Ley". (Negrilla suplida). El Artículo 2, *supra,* define "Ofensor Sexual" y "Delito Sexual" de manera que se debe interpretar que toda persona convicta de un delito que tenga como elemento constitutivo un acto sexual o una conducta sexual debe constar en el Registro.

Bien sabemos que el delito de actos lascivos o impúdicos sanciona conducta delictiva de naturaleza sexual; además, el señor Hernández Díaz fue puesto a libertad a prueba, tal como estatuye el Artículo 3, *supra*. Sin embargo, por razones desconocidas, la Ley Núm. 243-2011 nunca deja claro el término

aplicable cuando se encuentra a una persona culpable por el referido delito en contra de una persona mayor de edad. Ante una laguna de esta magnitud, nos corresponde limitar nuestra intervención judicial y evitar aplicar términos a ciegas. Hacer lo contrario conllevaría un uso indebido de nuestras facultades revisoras.

El lenguaje expreso sobre los actos lascivos en diversas modalidades se eliminó de la legislación aplicable, solo dejando alusión al elemento de la minoridad de la víctima. No cabe más que concluir que la información del señor Hernández Díaz no debe constar en el Registro.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|                           |             |
|---------------------------|-------------|
| El Pueblo de Puerto Rico  |             |
| Recurrido                 |             |
| v.                        | CC-2023-0270 |
| Ángel L. Hernández Díaz   |             |
| Peticionario              |             |

Opinión de conformidad emitida por el Juez Asociado señor Estrella Martínez

En San Juan, Puerto Rico, a 30 de junio de 2026.

Nos encontramos ante una controversia singular que permitía pautar y reconocer un balance entre los derechos de las víctimas de delito y los de las personas que deben figurar en el *Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores*. Hoy, lamentablemente, se perdió esa oportunidad.

En consecuencia, aunque reconozco que el peticionario en este caso cumplió más allá del término por el cual debía permanecer inscrito y, por tanto, procede eliminar su información del referido registro, considero que debimos pautar que la Ley Núm. 266-2004, *infra*, aun enmendada por la Ley Núm. 243-2011, *infra*, exige que toda persona convicta por actos lascivos o impúdicos figure en el *Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores*, incluso cuando en la sentencia se haya eliminado la alegación de minoridad de la víctima o

cuando el delito haya recaído sobre una persona mayor de edad, entendiéndose, para los fines de esta ley, a quienes tengan dieciocho (18) años o más.

Con este breve contexto, procedo a examinar los hechos procesales que enmarcan la controversia para ofrecer un análisis completo de mi interpretación de la materia.

**I**

Como trasfondo del asunto ante nuestra consideración, el 8 de febrero de 2006 el Ministerio Público presentó cuatro (4) acusaciones contra el Sr. Ángel L. Hernández Díaz (señor Hernández Díaz o peticionario) por violaciones al Art. 105 del derogado Código Penal de 1974 (actos lascivos o impúdicos), 33 LPRA ant. sec. 4067, por eventos ocurridos entre los años 2002 y 2003. En los cargos formulados se alegó que, al momento de los hechos, la víctima era menor de catorce (14) años. No obstante, como resultado de un preacuerdo, el peticionario se declaró culpable de los cuatro (4) delitos imputados, <u>con la eliminación del elemento de minoridad de la víctima.</u>

El 7 de julio de 2006, el Tribunal de Primera Instancia emitió una *Sentencia* en la que le impuso al peticionario una pena de diez (10) años por cada uno de los cargos, a cumplirse de forma concurrente mediante el beneficio de sentencia suspendida, de conformidad con la

Ley Núm. 259 de 3 de abril de 1946, la Ley de Sentencia Suspendida y Libertad a Prueba, 34 LPRA sec. 1026 *et seq*.

Además, el foro de primera instancia le ordenó cumplir con las disposiciones de la Ley Núm. 266-2004, la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores, 4 LPRA sec. 536 *et seq*., lo que implicó ingresar su información personal en tal Registro. Adviértase que, para ese entonces, esta ley no había sido enmendada por la Ley Núm. 243-2011, *infra*, por lo que, como se detallará más adelante, toda persona obligada a inscribirse debía permanecer registrada por un término de diez (10) años.

Más tarde, el 22 de octubre de 2021, el Departamento de Corrección y Rehabilitación expidió un *Certificado de expiración de Sentencia*, el cual acreditó que el señor Hernández Díaz permaneció en libertad a prueba desde el 7 de julio de 2006 hasta el 7 de julio de 2016, fecha en que culminó su período de probatoria.[1]

El 5 de octubre de 2022, el peticionario acudió al foro primario y solicitó la eliminación de su información del Registro. Adujo que la derogada Ley Núm. 28-1997, *infra*, vigente al momento de los hechos que dieron base a las acusaciones en su contra, disponía que la persona debía permanecer inscrita en el Registro por un período

---

[1] Véase *Certificado de expiración de Sentencia*, Apéndice de la *Petición de certiorari* del señor Hernández Díaz, pág. 34.

de diez (10) años desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba, término que ya había transcurrido.

Asimismo, el peticionario argumentó que la enmienda introducida por la Ley Núm. 243-2011, *infra*, a la Ley Núm. 266-2004, *supra*, vigente al presente, no solo dejó de incluir, sino que eliminó la obligación de inscripción en el Registro para el delito de actos lascivos cuando este se comete contra una persona adulta. Por eso, planteó que la obligación de registrarse se limita a los casos en los que la persona perjudicada es menor de edad. En virtud de ello, y considerando que en su caso se eliminó la alegación de minoridad de la víctima, sostuvo que tenía derecho a que su información personal fuera excluida del Registro.

En atención a lo anterior, el 13 de enero de 2023, el Tribunal de Primera Instancia declaró *no ha lugar* a la solicitud del señor Hernández Díaz.[2]

El 13 de febrero de 2023, el peticionario acudió al Tribunal de Apelaciones mediante un recurso de *certiorari* en el que reiteró los planeamientos señalados ante el foro primario. Por su parte, el Procurador General arguyó que la ley aplicable al caso era la Ley Núm. 243-2011, *infra*, y que el peticionario debía permanecer inscrito de por

---

[2] En su determinación, el foro primario consignó de manera puntual lo siguiente: "No ha lugar a la solicitud de eliminación del nombre del Registro de ofensores sexuales". Íd., *Notificación* del Tribunal de Primera Instancia, pág. 23.

vida por ser un Ofensor Sexual Tipo III. Según su criterio, ello se debía a que el peticionario fue convicto del delito de actos lascivos y que, como cuestión de hecho, su víctima era menor de edad. Esto, independientemente de que se declaró culpable de actos lascivos sin el elemento de minoridad de la víctima.

Tras examinar los planteamientos presentados por las partes, el 29 de marzo de 2023, el Tribunal de Apelaciones denegó expedir el recurso de *certiorari*.[3]

Inconforme, el 28 de abril de 2023, el peticionario compareció ante este Tribunal mediante un auto de *certiorari*. En resumen, señaló que la Ley Núm. 243-2011, *infra*, no incluye el delito de actos lascivos sin el elemento de minoridad de la víctima entre los delitos que generan la obligación de inscripción en el Registro. En la alternativa, alegó que, incluso si se requiriera su inscripción en el Registro, había cumplido con el término

---

[3] A pesar de que no expidió el recurso, el foro intermedio realizó una expresión que va dirigida, precisamente, a los méritos de la controversia:

> En el presente caso, el señor Hernández Díaz fue convicto por el delito de actos lascivos o impúdicos según tipificado en el Artículo 105 del Código Penal de 1974, por lo que este es considerado un Ofensor Sexual Tipo III. Recordemos que la Ley núm. 243-2011 modificó el esquema de clasificación de los ofensores sexuales según la gravedad del delito cometido. Cónsono con el esquema establecido por el estatuto, este debe permanecer inscrito de por vida en el Registro de Ofensores Sexuales. Íd., *Resolución* del Tribunal de Apelaciones, pág. 65. Este caso fue identificado con el alfanumérico KLCE202300136.

de inscripción aplicable de diez (10) años, ya fuera conforme a la ley vigente al momento de los hechos, la Ley Núm. 28-1997, *infra*, la cual establecía un período de diez (10) años desde que, en lo pertinente, la persona comenzaba a cumplir la sentencia bajo el beneficio de libertad a prueba, o conforme a la ley vigente, la Ley Núm. 266-2004, *supra*, tras mantener un récord negativo de antecedentes penales por un mínimo de diez (10) años.

Por el contrario, y a diferencia de lo alegado ante el foro intermedio, el Procurador General expuso que la Ley Núm. 266-2004, *supra*: (1) incluye el delito de actos lascivos, aunque la víctima sea mayor de edad, entre aquellos que activan la obligación de inscribir a la persona convicta en el Registro, clasificándola como Ofensor Sexual Tipo II;[4] (2) requiere que el término de

---

[4] En específico, para el Procurador General, la Asamblea Legislativa realizó dos valoraciones o distinciones importantes: una, cuando la persona incurre en el delito en sí mismo, y otra, cuando la persona incurre en la tentativa del delito o su conspiración. Según su postura, en esos dos últimos escenarios —tentativa o conspiración— el Legislador condicionó su inscripción como Ofensor Sexual Tipo II a "cuando la víctima fuere un menor de edad".

Añade que, bajo un análisis lingüístico, no cabe duda de que la inclusión de la conjunción "o" en la definición de "Ofensor Sexual Tipo II", que establece: "Personas que resulten convictas por los siguientes delitos o su tentativa o conspiración cuando la víctima fuere un menor de edad…", separa los escenarios de la tentativa y la conspiración de los delitos enumerados, con el fin de exigir la inscripción en estos casos únicamente a quienes intentan cometer el acto contra menores de edad. Es decir, "si una persona incurre en el delito en sí de actos lascivos, no hace diferencia si la víctima es menor o mayor de edad porque la

inscripción de veinticinco (25) años aplicable a un Ofensor Sexual Tipo II se compute desde que la persona inicie, entre otros supuestos, su probatoria; (3) por ende, mandata que el señor Hernández Díaz debe permanecer inscrito desde que comenzó su probatoria en julio de 2006 hasta julio de 2031; y (4) de forma alternativa, contiene en su Art. 2 una "cláusula residual" que define como "Ofensor Sexual" a toda persona convicta por delitos de índole sexual, con el fin de asegurar que queden cubiertos <u>todos</u> los delitos de esa naturaleza cuyo registro es la razón principal de la legislación, por lo que el peticionario debe inscribirse en el Registro.

Conforme a lo expuesto y en cuanto a la controversia medular de este caso, este Tribunal debió erradicar, sin ambages, la noción de que las personas convictas por el delito de actos lascivos por sí solo —a saber, sin el elemento de minoridad de la persona perjudicada, lo que equivale a decir cuando se comete contra una persona mayor de edad—, no están obligadas a ingresar su información al Registro tras la aplicación retroactiva de las disposiciones de la Ley Núm. 243-2011, *infra*.

---

ley requiere su inscripción en el Registro [como Ofensor Sexual Tipo II], independientemente de ese elemento. No obstante, si la persona incurre en la tentativa o la conspiración del delito de actos lascivos, por ejemplo, habrá que registrarlo únicamente si la víctima es menor de edad [como Ofensor Sexual Tipo II]." Véase *Alegato de El Pueblo de Puerto Rico*, pág. 2.

Con esa aspiración en mente, procedo a exponer el marco jurídico que sustenta mi postura.

## II

## A.

Es pertinente mencionar que la Ley Núm. 28-1997, 4 LPRA ant. sec. 531 *et seq.*, estableció por primera vez en Puerto Rico el Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores.[5] El propósito del aludido Registro, al amparo de esa ley, era mantener informadas a las autoridades gubernamentales y a la ciudadanía en general sobre el paradero de aquellas personas que habían sido convictas de delitos sexuales violentos o de abuso contra menores de edad y que se reintegraron a la libre comunidad. Art. 1 de la Ley Núm. 28-1997, 4 LPRA ant. sec. 531. Ello, como un medio para garantizar la seguridad, protección y el bienestar general. Íd. En consecuencia, en tal Registro debía incluirse el nombre, dirección, fotografía y otra información personal de quienes, por ley, debían inscribirse en él.

---

[5] En aquel entonces, esta legislación se adoptó en atención a la ley federal *Jacob Wetterling Crimes Against Children and Sexually Violent Offender Reistration Program*, 42 USC sec. 14071 *et seq*. En concreto, esa ley requería a los estados y a los territorios de Estados Unidos crear un registro con el propósito de que las personas convictas por cometer ciertos delitos sexuales y contra menores estuviesen obligadas a inscribirse antes de reintegrarse a la libre comunidad. Véase Segundo Informe del P. de la C. 540, 19 de junio de 1997, 1era Sesión Ordinaria, 13era Asamblea Legislativa, pág. 10.

A esos fines, el Art. 3(a) de la Ley Núm. 28-1997, 4 LPRA ant. sec. 535a, delimitaba las personas que debían figurar inscritas en el Registro, **entre las cuales se incluía toda persona que cometiera el delito de actos lascivos o impúdicos.** En armonía con lo anterior, esa ley ordenó expresamente la inscripción en el Registro de las personas convictas por ese delito, conforme al derogado Código Penal de 1974. *Placer Román v. ELA y otros*, 193 DPR 821, 849 (2015) (Sentencia) (Op. concurrente del Juez Asociado señor Estrella Martínez).

Por otra parte, el Art. 5 de la referida ley disponía que la persona convicta permanecería "en el Registro por un período de diez (10) años desde que la persona cumplió la sentencia de reclusión, desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que es liberada bajo palabra". 4 LPRA ant. sec. 535c.

Por lo tanto, la información de la persona convicta debía mantenerse en el Registro por diez (10) años, computados a partir de cualquiera de los siguientes momentos: (1) desde que la persona convicta cumpliera la sentencia de reclusión, o (2) desde que la persona convicta comenzara a cumplir la sentencia bajo el beneficio de libertad a prueba o bajo palabra. *Placer Román v. ELA y otros*, supra, págs. 849-850.

Sin embargo, esta ley fue derogada con el fin de promover un nuevo estatuto de mayor cobertura, el cual discuto a continuación.

**B.**

La Asamblea Legislativa derogó la Ley Núm. 28-1997 con la aprobación de la Ley Núm. 266-2004, conocida como la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores, con el fin de atemperar el Registro a nuestras realidades y, en la medida de lo posible, prevenir situaciones que pudieran incidir en el maltrato o abuso contra niños, niñas y personas envejecientes. Véase Exposición de Motivos, Ley Núm. 266-2004, *supra*.[6] Así, nuevamente se dispuso que en el Registro se harían constar los datos personales y la información concerniente a las personas convictas que, conforme a esta ley, deben inscribirse al reintegrarse a la libre comunidad. Íd.

Al igual que la legislación anterior, el Art. 3(a) de la Ley Núm. 266-2004, 4 LPRA ant. sec. 536a, **reiteró la obligación de inscripción en el Registro para las personas**

---

[6] Precisamente, y de manera similar a la ley precedente, la Exposición de Motivos señalaba que su aprobación respondió al propósito de cumplir con la legislación federal *Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program*, la cual exigía que los estados, incluyendo a Puerto Rico, adoptaran legislación para requerir el registro de las personas convictas por determinados delitos de índole sexual y por abuso contra menores, una vez se reintegraran a la libre comunidad, mediante la inclusión de su información en un registro creado para esos fines, por un término mínimo de diez (10) años.

**convictas por los delitos de actos lascivos o impúdicos.**[7] De igual modo, el Art. 5 dispuso que la información de la persona debía permanecer en el Registro por un período de diez (10) años. Ley Núm. 266-2004, 4 LPRA ant. sec. 536c. No obstante, la Asamblea Legislativa alteró la forma de cómputo de ese término al disponer que "se mantendrá en el Registro por un período mínimo de diez (10) años **desde que cumplió la sentencia impuesta**". (Negrillas suplidas). Íd.

Por consiguiente, según esa legislación, se requería que la información de la persona convicta se mantuviese inscrita y publicada en el Registro por diez (10) años contados desde el cumplimiento de la sentencia. Es decir, a diferencia de su antecesora, la Ley Núm. 266-2004 no proveía un cómputo distinto para ese término cuando la persona cumplía su sentencia en la libre comunidad bajo algún beneficio de sentencia suspendida o dentro de una institución carcelaria.[8] *Placer Román v. ELA y otros*, *supra*, pág. 851.

---

[7] Específicamente, disponía lo siguiente:

> Se crea un Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores en el Sistema de Información de Justicia Criminal. Serán registradas en el mismo:
>
> (a) las personas que resulten convictas por alguno de los siguientes delitos o su tentativa: violación, seducción, sodomía, **actos lascivos o impúdicos** […] (Negrillas suplidas). 4 LPRA ant. sec. 536a.

[8] Es importante aclarar, tal como señalé en mi *Opinión concurrente* en *Placer Román v. ELA y otros*, *supra*, nota 11, que ni la Exposición de Motivos ni el historial legislativo evidenciaban el fundamento de la Asamblea Legislativa para

Más tarde, la Asamblea Legislativa enmendó la Ley Núm. 266-2004 mediante la Ley Núm. 243-2011, 4 LPRA sec. 536 *et seq*. Como resultado, se modificó el período de inscripción requerido en el Registro en función del tipo de delito cometido, así como diversos aspectos relevantes para la controversia. A continuación, presento el análisis correspondiente.

**C.**

Según la Exposición de Motivos de la Ley Núm. 243-2011, *supra*, este cuerpo normativo se aprobó con el fin de atemperar el Registro a las disposiciones de la ley federal *Adam Walsh Child Protection and Safety Act of 2006*, conocida como *Sex Offender Registration and Notification Act* (SORNA), Ley Pub. Núm. 109-248, 27 de julio de 2006, 120 Stat. 587. Esta legislación federal tiene como objetivo principal **fortalecer la protección de las víctimas de delitos sexuales** y fijar obligaciones

---

establecer el cómputo del período de diez (10) años a partir del cumplimiento de la sentencia impuesta, sin contemplar un cómputo distinto para las personas convictas acogidas al beneficio de sentencias suspendidas. No obstante, expresé que del historial legislativo y de la Exposición de Motivos se desprendía que lo anterior resultaba en un contrasentido, pues permitía que una persona convicta por delitos sexuales o abuso contra menores permaneciera en la libre comunidad bajo el beneficio de libertad a prueba o libertad bajo palabra sin estar obligada a inscribirse en el Registro hasta la culminación de su probatoria. Sin duda, de esta manera se socavaba el propósito de la Ley Núm. 266-2004, que buscaba informar a la ciudadanía sobre las personas convictas de los delitos establecidos en la ley una vez se integraban a la libre comunidad. Ahora bien, la Asamblea Legislativa atendió esta situación al promulgar la Ley Núm. 243-2011, según expondré más adelante.

mínimas para la operación de los registros de ofensores sexuales en distintas jurisdicciones. Íd. Para alcanzar este propósito, la Legislatura de Puerto Rico adoptó enmiendas que incorporaron definiciones adicionales y establecieron nuevos deberes, tanto para las personas sujetas al registro como para las agencias competentes encargadas de su administración y fiscalización.

Como parte de estas enmiendas, la Ley Núm. 243-2011 añadió a la Ley Núm. 266-2004 las definiciones de convicto, delito específico contra menor de edad, delito sexual, empleado, estudiante, ofensor sexual, ofensor sexual tipo I, II y III, menor de edad, residencia, entre otras. *Placer Román v. ELA y otros*, *supra*, pág. 853. Además de ello, enumeró las personas que deben ser registradas, incluyendo —entre otras— a los ofensores sexuales tipo I, II y III, así como a las personas convictas por los delitos mencionados en el Art. 2. Íd., págs. 854-856.

En lo aquí pertinente, y a fin de delimitar quiénes quedan sujetos a las disposiciones del Registro, el Art. 2 de la Ley Núm. 266-2004, según enmendada, define el término de "Ofensor Sexual" como "aquel individuo que ha sido convicto por un delito sexual o su tentativa o conspiración". 4 LPRA sec. 536. De igual forma, ese mismo artículo define el concepto de "Delito Sexual" e incluye tanto los supuestos en que la víctima es una persona menor de edad como aquellos en que se trata de una persona

adulta. Concretamente, para los fines de la aplicación de esta legislación, lo define de la manera siguiente:

> (3) "Delito Sexual" — En general, excepto por lo dispuesto en los sub-incisos (a) y (b), incluye lo siguiente:
>
>> (i) **un delito que tenga como elemento constitutivo un acto sexual o conducta sexual con otra persona**;
>>
>> (ii) un delito específico contra un menor de edad;
>>
>> […]
>
> Disponiéndose que:
>
>> […]
>>
>> (b) Un delito que incluya conducta sexual consentida no es un delito sexual para propósitos de esta Ley, si la víctima es un adulto, a menos que dicho adulto esté bajo la custodia legítima del ofensor al momento del delito. Íd. (Negrillas suplidas).

De lo anterior se desprende que el concepto de "Delito Sexual" abarca todo delito que tenga como elemento constitutivo un acto sexual o conducta sexual con otra persona. Tal como he señalado en casos anteriores, esta definición también incluye conductas dirigidas a personas que no sean menores de edad, salvo en las situaciones de conducta sexual consentida, siempre que la persona adulta no se encuentre bajo la custodia legítima de su ofensor. *Placer Román v. ELA y otros*, *supra*, pág. 856. Es relevante destacar que la Asamblea Legislativa estableció un

subinciso específico para los casos en que la víctima es una persona menor de edad.[9] Íd.

Asimismo, se desprende que, al constituirse el "Delito Sexual" como un acto o conducta sexual contra otra persona, **dentro de esta definición se incluyen los delitos de actos lascivos o impúdicos**, así como cualquier otro delito de naturaleza sexual cometido contra un adulto, siempre que no opere la excepción antes señalada.[10] Íd.

_____

[9] A los efectos de esta ley, se entiende por "Menor de edad" "toda persona que no haya cumplido los dieciocho (18) años de edad." Art. 2 de la Ley Núm. 266-2004, 4 LPRA sec. 536.

[10] Cabe recordar que el delito de actos lascivos, según el Art. 105 del derogado Código Penal de 1974, *supra*, —bajo el cual el peticionario de este caso fue convicto—, disponía:

> Toda persona que sin intentar consumar acceso carnal cometiere cualquier acto impúdico o lascivo con otra será sancionada con pena de reclusión según más adelante se dispone si concurrieran cualesquiera de las siguientes modalidades:
>
> […]
>
> (d) Si la víctima fuere compelida al acto mediante el empleo de medios engañosos que anulen o disminuyan sustancialmente, sin su conocimiento, su capacidad de resistencia.

Además, a modo de referencia, el Art. 133 del Código Penal de 2012, 33 LPRA sec. 5194, establece que el delito de actos lascivos ocurre cuando una persona "a propósito, con conocimiento o temerariamente, sin intentar consumar el delito de agresión sexual […], someta a otra persona a un acto que tienda a despertar, excitar o satisfacer la pasión o deseos sexuales del imputado […]".

A la luz de estas disposiciones, **resulta evidente que el delito de actos lascivos constituye un delito de índole sexual, dado que sus elementos constitutivos implican actos**

Esta interpretación nos conduce inequívocamente a que la ley protege tanto a víctimas menores como adultas, y que la ausencia de una categoría específica para ofensores que cometen actos lascivos contra adultos no implica su exclusión de la protección que ofrece el Registro.

Como consecuencia de lo discutido, toda persona que ha sido convicta por un "Delito Sexual" —entendido como cualquier acto o conducta sexual con otra persona, ya sea mayor o menor de edad, salvo lo dispuesto en los sub-incisos (a) y (b)— se clasifica como "Ofensor Sexual", es decir, aquel individuo que ha sido convicto por un delito sexual, su tentativa o conspiración. En ese sentido, la Ley Núm. 243-2011 establece que las personas que incurran en estos actos o conductas sexuales están obligadas a inscribirse en el Registro, sin que la edad de la víctima sea determinante para esta clasificación; lo relevante es que el individuo haya cometido un delito sexual contra otra persona. *Placer Román v. ELA y otros*, *supra*, pág. 857.

No obstante, esta definición general difiere de los conceptos de Ofensor Sexual Tipo I, II y III, en los cuales la mayoría de los supuestos se refieren a delitos cometidos contra víctimas menores de edad. Íd., págs. 856-857. Ahora bien, como el propósito del Registro se ha

---

o conductas sexuales, tal como se contempla en la definición de "Delito Sexual" bajo la Ley Núm. 266-2004, *supra*.

mantenido desde su creación y su alcance se ha ampliado, no debe interpretarse que la intención legislativa ha sido privar de esta protección a las personas víctimas de crímenes sexuales que no son menores de edad, aun cuando no se haya establecido una categoría específica de ofensor sexual para estos casos. Íd., pág. 854. Por el contrario, la intención legislativa ha sido incluir más actos o conductas delictivas que podrían dar lugar a la inscripción de una persona en el Registro.

Por último, en lo que respecta expresamente a los distintos tipos de ofensores sexuales y al delito de actos lascivos, el Art. 2 establece lo siguiente:

> (9) "Ofensor Sexual Tipo II". — Personas que resulten convictas por los siguientes delitos o su tentativa o conspiración cuando la víctima fuere un menor de edad:
>
> (i) Actos lascivos o impúdicos…
>
> (ii) Actos lascivos…
>
> (10) "Ofensor Sexual Tipo III". — Personas que resulten convictas por los siguientes delitos o su tentativa:
>
> (i) Violación; seducción; sodomía; actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años…
>
> […]
>
> (iii) Actos lascivos, cuando la víctima no ha cumplido los trece (13) años de edad… 4 LPRA sec. 536.

### D.

Según discutí, la Ley Núm. 243-2011 enmendó la Ley Núm. 266-2004 para establecer, entre otras cosas, tres (3)

clasificaciones de ofensores sexuales, en atención a los delitos cometidos, los respectivos términos de inscripción y el punto a partir del cual se computan tales términos, conforme a las circunstancias de cada caso. En específico, el Ofensor Sexual Tipo I está sujeto a un término de inscripción de quince (15) años; el Ofensor Sexual Tipo II, a veinticinco (25) años; y el Ofensor Sexual Tipo III, a inscripción de por vida. Art. 5 de la Ley Núm. 266-2004, 4 LPRA sec. 536c.

De acuerdo con lo anterior, cuando se ordena la inscripción de una persona convicta en el Registro, **el cómputo del término comienza desde que esta se integra a la libre comunidad.** De manera más específica, ese cómputo inicia desde que: (1) la persona ofensora sexual es excarcelada tras cumplir la pena de reclusión impuesta y el Departamento de Corrección y Rehabilitación notifica su inclusión en el Registro; (2) comienzan los beneficios de libertad a prueba o sentencia suspendida (probatoria); (3) inicia su libertad bajo palabra; o (4) comienza a participar en un programa de desvío, tratamiento o rehabilitación establecido por el Departamento de Corrección y Rehabilitación. Íd.

En los casos de los incisos (2), (3) y (4), el término de inclusión en el Registro transcurre cuando, a su vez, se emite la sentencia, resolución o determinación del Tribunal que autoriza la participación en tales programas,

así como la notificación de su inclusión en el Registro. Íd.

Entonces, la inscripción se mantiene hasta que transcurra el término correspondiente, ya sea de quince (15) o veinticinco (25) años, según la categoría asignada: Ofensor Sexual Tipo I o II. Para un Ofensor Sexual Tipo III, la inscripción se mantiene de por vida. Íd.

**III**

**A.**

La controversia central de este caso consiste en determinar si, con la aprobación de la Ley Núm. 243-2011, se eliminó la obligación de inscripción en el Registro para las personas convictas por actos lascivos cometidos contra una persona adulta —entendiéndose, a los fines de esta ley, como aquella de dieciocho (18) años o más—, o cuando en la sentencia se eliminó el elemento de minoridad de la víctima.

Para el peticionario, la aprobación de la Ley Núm. 243-2011 tuvo el efecto de eliminar la obligación de inscripción en el Registro cuando la persona cometió el delito de actos lascivos contra una persona adulta, es decir, sin el elemento de minoridad de la víctima, ya que la ley no contempla una categoría para este tipo de situaciones. En consecuencia, según su postura, las personas sentenciadas por ese delito no están obligadas a inscribirse y, en los supuestos en que ya estén inscritas,

su información debe ser removida del Registro. Esta interpretación errónea limita la obligación de inscripción únicamente a los casos en los que la víctima es menor de dieciocho (18) años, dejando fuera del alcance del Registro a quienes cometen actos lascivos contra personas adultas.

Sin embargo, a base de un análisis del propósito de la legislación relativa al Registro y de las definiciones incluidas en ella, tales como "Ofensor Sexual" y "Delito Sexual", entre otras, concluyo que el delito de actos lascivos o impúdicos cometidos contra una persona adulta está comprendido dentro de la lista de delitos sexuales que requieren la inscripción de la persona convicta en el Registro.[11] Veamos.

Según discutido en las secciones anteriores de esta *Opinión de conformidad*, desde la creación de la Ley Núm. 28-1997 hasta la aprobación de la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011, el propósito de estas disposiciones siempre ha sido mantener informadas a las autoridades gubernamentales y a la ciudadanía en general sobre el paradero de las personas convictas por delitos sexuales que se reintegran a la libre comunidad, así como proteger a la sociedad frente a quienes cometen este tipo de crímenes. Véanse las Exposiciones de Motivos de la Ley

---

[11] Véase, además, la expresión de conformidad del Juez Asociado señor Estrella Martínez en *Pueblo v. Toro Vélez*, 212 DPR 919, 920 (2023) (Sentencia).

Núm. 28-1997, de la Ley Núm. 266-2004 y de la Ley Núm. 243-2011, *supra*. Además, estas leyes establecieron deberes tanto para las personas sujetas al Registro como para las agencias competentes encargadas de su administración y fiscalización. Íd.

Incluso, tanto la Ley Núm. 28-1997 como la Ley Núm. 266-2004 incluyeron manifiestamente el delito de actos lascivos entre aquellos que requieren la inscripción de la persona convicta en el Registro. Véase Art. 3(a) de la Ley Núm. 28-1997, 4 LPRA ant. sec. 535 y Art. 3(a) de la Ley Núm. 266-2004, 4 LPRA ant. sec. 536a. Sin embargo, aunque la Ley Núm. 243-2011 creó nuevas categorías para clasificar a los ofensores sexuales, ello no implicó la eliminación del delito de actos lascivos cometidos contra personas adultas del ámbito del Registro.

Adoptar una interpretación distinta implicaría pasar por alto que la Ley Núm. 243-2011 no modificó, directa ni indirectamente, la política pública de proteger a todos los sectores de la sociedad frente a los delitos de índole sexual. Por el contrario, la Asamblea Legislativa reafirmó ese compromiso. La Exposición de Motivos de la Ley Núm. 243-2011, *supra*, expresa de forma inequívoca su objetivo de "fortalecer y aumentar la efectividad del Registro para la seguridad del público", lo cual evidencia que la intención legislativa fue ampliar y robustecer los mecanismos de protección ciudadana, no restringirlos.

Para ello, enumeró las personas que deben ser registradas, incluyendo —entre otras— a los ofensores sexuales tipo I, II y III, **así como a las personas convictas por los delitos enumerados en el Art. 2**. *Placer Román v. ELA y otros*, *supra*, págs. 854-856. Precisamente, las personas convictas por los delitos enumerados en el Art. 2 son "Ofensores Sexuales", entiéndase "aquel[los] individuo[s] que ha[n] sido convicto[s] por un delito sexual o su tentativa o conspiración". Art. 2 de la Ley Núm. 266-2004, 4 LPRA sec. 536. Recordemos que "Delito Sexual" es "un delito que tenga como elemento constitutivo un acto sexual o conducta sexual con otra persona" Íd. Evidentemente, actos lascivos es un delito sexual cometido contra otra persona, y "otra persona" incluye, sin duda, a una persona mayor de edad.

De esta forma, la Ley Núm. 243-2011 establece que las personas que incurren en estos actos o conductas sexuales están obligadas a inscribirse en el Registro, sin que la edad de la víctima sea determinante para esta clasificación. Lo relevante es que el individuo haya cometido un delito sexual contra otra persona.

Conforme a lo anterior, interpretaciones que limiten la obligación de inscripción únicamente a los casos relacionados con actos lascivos en que la víctima es menor de edad serían contrarias tanto al texto como al espíritu de la ley, así como al propósito fundamental del Registro:

informar y proteger a la comunidad frente a conductas sexualmente delictivas, sin distinción basada en la edad de la víctima. Es evidente que, para efectos de la inscripción en el Registro, lo material es la conducta delictiva de la persona ofensora y no el perfil ni la edad cronológica de su víctima.

En síntesis, sostengo que el peticionario en este caso debía inscribirse al serle aplicable el concepto "Ofensor Sexual" *per se*, lo que hace imperativa su inscripción en el Registro.

### B.

Por otro lado, como se discutió, el señor Hernández Díaz estaba obligado a inscribirse en el Registro por haber cometido el delito de actos lascivos sin el elemento de minoridad de la persona perjudicada. Conforme a la normativa vigente en ese entonces, la sentencia dictada en su contra dispuso que debía cumplir con las disposiciones de la Ley Núm. 266-2004, *supra*, que regula la inscripción de las personas convictas por delitos sexuales, la cual aún no había sido enmendada por la Ley Núm. 243-2011.[12] En consecuencia, su obligación de inscripción se extendía por un término de diez (10) años, contados desde el cumplimiento de la sentencia impuesta. Art. 5 de la Ley Núm. 266-2004, 4 LPRA ant. sec. 536c.

---

[12] Véase *Sentencia* emitida por el Tribunal de Primera Instancia el 7 de julio de 2006, Apéndice de la *Petición de certiorari* del señor Hernández Díaz, págs. 26-33.

Posteriormente, con la aprobación de la Ley Núm. 243-2011, se precisó que, cuando se ordena la inscripción de una persona convicta en el Registro, el cómputo del término comienza, en esencia, desde que esta se integra a la libre comunidad. De manera más específica, ese cómputo inicia desde que, entre otros supuestos, comienzan los beneficios de sentencia suspendida (probatoria), como ocurre en el presente caso. Art. 5 de la Ley Núm. 266-2004, 4 LPRA sec. 536c.

Recordemos, como señalé en mi *Opinión disidente* en *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019), que soy del criterio de que, cuando un estatuto de naturaleza civil conlleva consecuencias punitivas se activa la protección constitucional contra leyes *ex post facto*.[13] Bajo esa interpretación, la forma de cómputo para las personas convictas por delitos sexuales que se encuentren cumpliendo su pena en libertad a prueba cambió con la aprobación de la Ley Núm. 243-2011 y, solo en ese extremo, esa enmienda les resulta beneficiosa, como ocurre en este caso.[14] A tal efecto, el cómputo del término de diez (10) años del señor Hernández Díaz debe contarse desde el día

---

[13] Para una discusión en torno a lo errado de catalogar la legislación que nos ocupa como una de carácter civil, véase I. Y. Rosario Nieves, *El fraude de etiquetas en la clasificación del Registro de Ofensores Sexuales como "medida no punitiva",* 85 Rev. Jur. UPR 169 (2016).

[14] De hecho, este método de cómputo es el que establecía la Ley Núm. 28-1997, *supra*, como se discutió previamente.

en que fue puesto en libertad a prueba, es decir, desde el 7 de julio de 2006 hasta el 7 de julio de 2016.[15]

Así, toda vez que el peticionario ha permanecido inscrito por casi veinte (20) años, ha cumplido en exceso el término aplicable, por lo que procede ordenar la eliminación de su nombre y de sus datos personales del Registro.

**IV.**

Por los fundamentos expuestos, concluyo que la Ley Núm. 243-2011 no eliminó la obligación de inscripción en el Registro para las personas que cometen actos lascivos o impúdicos sin el elemento de minoridad de la víctima. No obstante, coincido en que, en este caso particular, procede ordenar la eliminación del señor Hernández Díaz del Registro por las razones discutidas.

Luis F. Estrella Martínez
Juez Asociado

---

[15] Véase *Certificado de expiración de Sentencia*, Apéndice de la *Petición de certiorari* del señor Hernández Díaz, pág. 34.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Ángel L. Hernández Díaz<br><br>Peticionario | CC-2023-0270 | *Certiorari* |

Opinión de conformidad emitida por la Jueza Asociada Rivera Pérez, a la cual se une el Juez Asociado señor Candelario López

En San Juan, Puerto Rico, a 30 de junio de 2026.

En el dictamen que hoy emitimos estoy conforme con la decisión de revocar al Tribunal de Apelaciones, así como al Tribunal de Primera Instancia. En el presente caso, procede eliminar del *Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores* (Registro) toda la información del Sr. Ángel L. Hernández Díaz (peticionario). No obstante, ante la importancia de la controversia entiendo meritorio exponer los fundamentos por los cuales proceden la eliminación del peticionario del Registro.

Adelanto que, de un análisis de la Ley Núm. 266-2004, según enmendada, conocida como la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores (Registro), 4 LPRA sec. 536 *et seq.*, surge que las personas que resulten convictas por el delito de actos lascivos o impúdicos cometidos contra un adulto están incluidas bajo la

definición de Ofensor Sexual Tipo I. En consecuencia, deben permanecer registradas por el término de quince años dispuesto en la Ley.

Por ello, el señor Hernández Díaz no debe permanecer inscrito en el Registro por haber cumplido con el término de quince años correspondiente al Ofensor Sexual Tipo I. Para arribar a dicha conclusión, el presente caso requería interpretar si la Ley Núm. 266-2004, *supra*, según enmendada por la Ley Núm. 243-2011, exige la inscripción en el Registro de la persona convicta por actos lascivos o impúdicos cometidos contra una persona mayor de edad. A continuación, expongo los fundamentos.

**I**

El 8 de febrero de 2006, el Ministerio Público presentó cuatro acusaciones contra el peticionario por cometer actos lascivos e impúdicos contra una menor de catorce años.[1] Según surge de las acusaciones, los hechos ocurrieron entre los años 2002 y 2003, periodo durante el cual el peticionario cometió actos altamente repudiables contra la menor.

Luego de algunos trámites procesales, el peticionario hizo alegación preacordada por las cuatro acusaciones del delito de actos lascivos o impúdicos. Surge del expediente que, como parte del preacuerdo con el Ministerio Público, se eliminó el elemento de minoridad de la víctima. Así, el 7 de julio de 2006, el Tribunal de Primera Instancia, Sala Superior de Caguas, dictó sentencia contra el peticionario y le impuso

---

[1] *Petición de Certiorari*, Anejo I, págs. 22-25.

una pena de diez años, para ser cumplidas de forma concurrente mediante el beneficio de sentencia suspendida.[2] Asimismo, se le ordenó al peticionario a cumplir con las disposiciones de la Ley Núm. 266-2004, *supra*.

El 7 de julio de 2016, finalizó la libertad a prueba del peticionario, por lo que expiró su sentencia.[3] Ante ello, este presentó una *Moción para eliminar nombre del Registro de Ofensores Sexuales*.[4] Mediante dicho escrito, argumentó que la Ley Núm. 28-1997 -la cual se encontraba vigente al momento de los hechos que dieron lugar al proceso penal de este caso- disponía que la persona debía permanecer en el Registro por un periodo de diez años desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba, término que ya había vencido.

De igual forma, señaló que la Ley Núm. 243-2011, la cual enmendó la Ley Núm. 266-2004, *supra*, no incluyó como ofensor sexual a la persona convicta por el delito de actos lascivos contra un adulto, delito por el cual él había resultado convicto. Por consiguiente, solicitó su exclusión del Registro. Sin embargo, el foro primario declaró "No ha lugar" la solicitud mediante notificación emitida el 13 de enero de 2023.[5]

En desacuerdo con la determinación del foro de instancia, el 13 de febrero de 2023, el peticionario presentó

---

[2] *Petición de Certiorari*, Anejo I, págs. 26-33.
[3] Véase *Certificado de expiración de sentencia* en la de *Petición Certiorari*, Anejo I, pág. 34.
[4] Petición de *Certiorari*, Anejo I, págs. 35-39.
[5] Petición de *Certiorari*, Anejo I, pág. 19.

un recurso de *certiorari* ante el Tribunal de Apelaciones.[6] En esencia, reiteró que, toda vez que la Ley Núm. 243-2011 eliminó el delito de actos lascivos sin el elemento de minoridad, o bien porque él había cumplido con el término de diez años dispuesto en la Ley Núm.28-1997, su información debía ser eliminada del Registro.

Por su parte, el Ministerio Público, por conducto del Procurador General de Puerto Rico (Procurador General), se opuso alegando que toda persona que comete el delito de actos lascivos, aun cuando no concurra el elemento de minoridad, tiene la obligación de inscribirse en el Registro. Sustentó su razonamiento en que el Artículo 2 de la Ley Núm. 266-2004, 4 LPRA sec. 536, incluye los delitos sexuales en general, sin establecer distinción alguna respecto a la víctima. Por tanto, expresó que el peticionario cumplía con la definición de Ofensor Sexual Tipo III, en la medida que resultó convicto de cometer el delito de actos lascivos y su víctima, como cuestión de hecho, era menor de edad; siendo ello suficiente por el carácter civil del Registro. Por consiguiente, debía permanecer inscrito en el Registro de por vida.

Luego de evaluados los planteamientos de las partes, el 29 de marzo de 2023, el Tribunal de Apelaciones dictó la *Sentencia* en virtud de la cual denegó expedir el recurso instado por el peticionario. El foro intermedio concluyó que el recurso no cumplía con los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA

---

[6] Véase caso Núm. KLCE202300136.

Ap. XXII-B. Además, señaló que los argumentos del peticionario carecían de mérito, toda vez que este había sido convicto por el delito de actos lascivos o impúdicos, razón por la cual era considerado un Ofensor Sexual Tipo III.

Aun inconforme, el peticionario presentó el recurso de *certiorari* que nos ocupa. Mediante este reiteró los planteamientos previamente esbozados ante el foro intermedio. El 30 de junio de 2023 expedimos la *Petición de Certiorari*. A su vez, el Ministerio Público, representado por el Procurador General, se opuso, argumentando que la Ley Núm.266-2004, *supra*, incluyó expresamente el delito de actos lascivos cuando la víctima es mayor de edad dentro de la definición de Ofensor Sexual Tipo II y que, además, ello refleja la intención legislativa de proteger a la ciudadanía de los convictos de delitos sexuales.

**II**

**A. Ley Núm. 28-1997**

La Ley Núm. 28-1997 creó el Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores en el Sistema de Información de Justicia Criminal.[7] Esta tenía el propósito de cumplir con la Ley Pública Núm. 103-322*, Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program*, la cual requería a los estados, y a Puerto Rico, adoptar una legislación para que personas convictas por ciertos delitos de naturaleza sexual y de abuso contra menores de edad

---

[7] 4 LPRA ant. sec. 535 *et seq*.

tuvieran que inscribirse en el Registro. *Pueblo v. Rodríguez Orengo*, 213 DPR 821 (2024). En ese sentido, **su propósito primordial era proteger a la comunidad frente a actos constitutivos de abuso sexual y abuso contra menores.** Artículo 1 de la Ley Núm. 28-1997, 4 LPRA ant. sec. 535. A su vez, tanto la legislación federal como la nuestra reconocía que esta normativa no tenía un carácter punitivo; **su finalidad era mantener informadas a las autoridades gubernamentales y a la ciudadanía sobre el paradero de las personas convictas que luego se reintegraban a la libre comunidad.** *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019).

**Entre las personas que debían ser inscritas en el Registro se encontraban aquellas que cometieran el delito de actos lascivos o impúdicos, conforme al derogado Código Penal de Puerto Rico de 1974.** Artículo 3(a) de la Ley Núm. 28-1997, 4 LPRA ant. sec. 535a. Por su parte, el Artículo 5 de la Ley Núm. 28-1997 establecía que la persona convicta se mantendría "en el Registro por un período mínimo de diez (10) años desde que la persona cumplió la sentencia de reclusión, desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que es liberada bajo palabra". 4 LPRA ant. sec. 535c. Una vez transcurriera ese término, el nombre y los datos de la persona serían eliminados del Registro. *Pueblo v. Ferrer Maldonado*, *supra*.

**B. Ley Núm. 266-2004**

Posteriormente, la Ley Núm. 28-1997, *supra*, quedó derogada por la Ley Núm. 266-2004, *supra*. **Al igual que su**

**predecesora, esta ley persigue el mismo fin protector, tanto hacia la comunidad en general como hacia las víctimas de delitos sexuales.** Artículo 1 de la Ley Núm. 266-2004, 4 LPRA sec. 536; *Pueblo v. Hernández García*, 186 DPR 656 (2012). En su exposición de motivos, la Ley establece que "el Estado tiene la obligación de proteger a la ciudadanía y a las víctimas de delito". Exposición de Motivos, de la Ley Núm. 266-2004, *supra*. "Y es que existe un patente peligro de reincidencia en la comisión de delitos que implican crímenes sexuales o que constituyen abuso contra menores, lo que representa un riesgo y se puede traducir en graves daños a las posibles víctimas". *Pueblo v. Hernández García*, *supra*, pág. 668.

**Cuando se aprobó dicho cuerpo normativo, se dispuso que las personas que cometieran el delito de actos lascivos o impúdicos quedaban obligadas a inscribirse en el Registro.** Artículo 3 de la Ley 266-2004, 4 LPRA ant. sec. 536a. Véase, además, *Pueblo v. Toro Vélez*, 212 DPR 919 (2023) (Sentencia) (Opinión de conformidad emitida por el Juez Asociado señor Rivera García, a la cual se unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón); *Placer Román v. ELA y otros*, 193 DPR 821 (2015) (Sentencia) (Opinión concurrente del Juez Asociado señor Estrella Martínez).

Según esta legislación, la información de la persona convicta debía permanecer inscrita por un periodo de diez años desde que cumplía la sentencia. 4 LPRA sec. 536c (ed.

2010). Igualmente, y a diferencia de lo dispuesto en la Ley Núm. 28-1997, con la aprobación de la Ley Núm. 266-2004, *supra*, no se estableció distinción alguna en cuanto al cómputo del término de diez años de inscripción en el Registro entre las personas convictas que cumplían su sentencia en una institución penal y aquellas que cumplían en la libre comunidad. *Pueblo v. Ferrer Maldonado*, *supra*.

### C. Ley Núm. 243-2011

En el 2011, la Asamblea Legislativa aprobó la Ley Núm. 243-2011 para enmendar la Ley Núm. 266-2004, *supra*, y armonizar el Registro a las disposiciones de la Ley Pública Núm. 109-248, *Adam Walsh Child Protection and Safety Act of 2006*, conocida como *Sex Offender Registration and Notification Act* (Ley SORNA). **Por su parte, la Ley SORNA fue promulgada con el propósito de proteger al público y a los menores de los ofensores sexuales, y en respuesta a los ataques perpetrados por depredadores violentos contra varias víctimas.**[8] 42 USCA Sec. 16901 *et seq*. **Su objetivo, al igual que el de nuestra legislación estatal, es garantizar la**

---

[8] Además de las víctimas menores de edad mencionadas en la declaración de propósito de la Ley Pública Núm. 109-248*, Adam Walsh Child Protection and Safety Act of 2006*, conocida como *Sex Offender Registration and Notification Act* (Ley SORNA), también se incluyen las siguientes víctimas mayores de edad:

"[…]
(3) Pam Lychner, **who was 31 years old**, was attacked by a career offender in Houston, Texas.
[…]
(5) Dru Sjodin, **who was 22 years old**, was sexually assaulted and murdered in 2003, in North Dakota.
[…]
(10) Alexandra Nicole Zapp, **who was 30 years old**, was brutally attacked and murdered in a public restroom by a repeat sex offender in 2002, in Bridgewater, Massachusett.
[…]" (Énfasis suplido). 42 USCA sec. 16901.

**protección de los menores y las víctimas de delitos sexuales.**
Véase *Pueblo v. Toro Vélez*, *supra*, (Opinión de conformidad
del Juez Asociado señor Rivera García). **En consecuencia, a
pesar de las enmiendas introducidas a la Ley Núm. 266-2004,
*supra*, en el 2011, su propósito no ha variado y continúa
siendo el mismo desde la creación del Registro en el 1997.**
*Íd*.

Con la aprobación de la Ley SORNA, el Congreso federal
de los Estados Unidos procuró uniformar los registros de
ofensores sexuales en toda la nación norteamericana. *Pueblo
v. Rodríguez Orengo*, *supra*. Asimismo, la legislación
homóloga federal **estableció los estándares mínimos que los
estados y territorios de los Estados Unidos deben seguir para
la implementación y continuidad del Registro en sus
respectivas jurisdicciones.**

A su vez, mediante *The National Guidelines for Sex
Offender Registration and Notification* (*National Guidelines*)
del 1 de junio de 2008, el Departamento de Justicia de los
Estados Unidos aclaró que la Ley SORNA no pretende excluir o
limitar la discreción de las jurisdicciones para adoptar
requisitos de registro y notificación más amplios o
adicionales, según resulte necesario para alcanzar el
cometido de la legislación federal.[9] Es decir, "the Act

---

[9] El Departamento de Justicia de los Estados Unidos publicó *The National
Guidelines for Sex Offender Registration and Notification* (*National
Guidelines*) con el propósito de ofrecer orientación y asistencia a las
jurisdicciones comprendidas —los 50 estados, el Distrito de Columbia,
los principales territorios de EE. UU. y los gobiernos de las tribus
indígenas— en la implementación de los estándares de SORNA en sus
programas de registro y notificación.

generally constitutes a set of minimum national standards and sets a floor, not a ceiling, for jurisdictions' programs. Hence, for example, a jurisdiction may have a system that requires registration by broader classes of convicted offenders than those identified in SORNA […]." *National Guidelines*, pág. 6.

La Ley SORNA creó tres clases o "tiers" en las cuales engloba los tipos de delitos que dan paso a una inscripción en el registro de ofensores sexuales. Destacamos que, bajo el estándar mínimo de la legislación federal, **el "Tier I sex offender" es "a sex offender other than a tier II or tier III sex offender."** 34 USC sec. 20911(2). De este modo, **"tier I is a residual class that includes all sex offenders who do not satisfy the criteria for tier II or tier III."** *National Guidelines*, pág. 22. Un ejemplo que proveen las *National Guidelines* para el Ofensor Sexual Tipo I es: "a sex offender whose registration offense is a sexual assault **against an adult that involves sexual contact but not a completed or attempted sexual act."** *Íd.*, pág. 22.

De otra parte, la clasificación de "Tier II sex offender" va dirigida a delitos cometidos contra menores. En cambio, la clasificación de "Tier III sex offender", aunque también menciona conductas penales cometidas contra menores de edad, tiene varias disposiciones dirigidas a las víctimas adultas cuando la naturaleza del delito es agravada.[10]

---

[10] En específico, la Ley SORNA establece lo siguiente:

En consideración a las modificaciones introducidas en el 2011 a la Ley Núm. 266-2004, *supra*, se acuñó la figura del ofensor sexual, la cual es definida como "aquel individuo que ha sido **convicto por un delito sexual** o su tentativa o conspiración".[11] Artículo 2 de la Ley 266-2004, *supra*; *Pueblo v. Rodríguez Orengo*, *supra*. Del mismo modo, los requisitos mínimos establecidos en la Ley SORNA fueron adoptados en la Ley 266-2004, *supra*, mediante la Ley 243-2011, incluyendo,

---

"(3) Tier II sex offender
The term "tier II sex offender" means a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and—
(A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense **against a minor**:
    (i) sex trafficking (as described in section 1591 of title 18);
    (ii) coercion and enticement (as described in section 2422(b) of title 18);
    (iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a)) [1] of title 18;
    (iv) abusive sexual contact (as described in section 2244 of title 18);
(B) involves—
    (i) use of a minor in a sexual performance;
    (ii) solicitation of a minor to practice prostitution; or
    (iii) production or distribution of child pornography; or
(C) occurs after the offender becomes a tier I sex offender.
(4) Tier III sex offender
The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and—
(A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
    (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of title 18); or
    (ii) abusive sexual contact (as described in section 2244 of title 18) **against a minor** who has not attained the age of 13 years;
(B) involves kidnapping of a **minor** (unless committed by a parent or guardian); or
(C) occurs after the offender becomes a tier II sex offender."
(Énfasis Nuestro). 34 USC sec. 20911.

[11] Cuando se aprobó la Ley 26-2004, según enmendada, conocida como la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, 4 LPRA sec. 536 *et seq.*, esta no contenía una definición de ofensor sexual, por lo que en su lugar hacía referencia al término de depredador sexual.

entre otras cosas, las clasificaciones Tipo I, II y III para los ofensores sexuales de acuerdo con el delito sexual cometido. *Pueblo v. Ferrer Maldonado*, *supra*. En lo atinente al caso que no ocupa, el Artículo 2 de la Ley Núm. 266-2004, *supra*, define las clasificaciones de ofensores sexuales como sigue:

> […]
>
> (8) "Ofensor Sexual Tipo I". — Personas que resulten convictas por los siguientes delitos o su tentativa o conspiración, **cuando se incurre en conducta constitutiva de abuso sexual;**
> (i) Restricción de la libertad, cuando la víctima fuere menor de dieciocho (18) años, según comprendido en el Artículo 168 (e) de la Ley 149-2004, según enmendada;
> (ii) Restricción de libertad agravada, cuando la víctima fuere menor de dieciséis (16) años, según comprendido en el Artículo 131 (e) de la Ley Núm. 115 de 22 de julio de 1974, según enmendada;
> (iii) Delito de maltrato a menores, según establecido en los Artículos 75 y 76 de la Ley 177-2003, según enmendada, cuando se incurre en conducta constitutiva de abuso sexual;
> (iv) Maltrato agravado conyugal, cuando se cometiere y simultáneamente se incurriere en conducta constitutiva de abuso sexual, en maltrato de un menor, según definido en la Ley 177-2003, según enmendada;
> (v) Envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno; Espectáculos obscenos; Exposiciones deshonestas cuando el acto tuviere lugar en presencia de una persona menor de 16 años, según establecido en los Artículos 106, 113 y 114 de la Ley Núm. 115 de 22 de julio de 1974, según enmendada; y en los Artículos 155 y 156 de la Ley 149-2004, según enmendada;
> (vi) Exposiciones obscenas; Proposición obscena, según tipificados en los Artículos 147 y 148 de la Ley 149-2004, según enmendada;
> (vii) Cualquier delito antecedente o sucesor de los mencionados en los sub-incisos (i), (ii), (iii) (iv), (v) ó (vi).
>
> (9) "Ofensor Sexual Tipo II". — Personas que resulten convictas por los siguientes delitos o su tentativa o conspiración **cuando la víctima fuere un menor de edad:**
> (i) **Actos lascivos o impúdicos;** proxenetismo o comercio de personas; delitos contra la protección de menores, perversión de menores cuando se admitiere o retuviere a un menor de dieciocho (18) años en una casa de prostitución o sodomía, comprendidos en los Artículos 105, 110 (a) y (c), 111(a) y 115 de la Ley Núm. 115 de 22 de julio de 1974, según enmendada.
> (ii) **Actos lascivos,** proxenetismo, rufianismo y comercio de personas; producción de pornografía infantil; posesión y distribución de pornografía infantil; utilización de un menor para pornografía infantil; corrupción de menores cuando se admitiere o retuviere a un menor en una casa de

prostitución o de comercio de sodomía, comprendidos en los Artículos 137(e), 144, 153(a), 157, 158 y 159 de la Ley Núm. 149 de 18 de junio de 2004.

.    .    .    .    .    .    .    .    .

(10) "Ofensor Sexual Tipo III". — Personas que resulten convictas por los siguientes delitos o su tentativa:

(i) Violación; seducción; sodomía; **actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años**; incesto; secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores comprendidos en los Artículos 99, 101, 103, 105, 122, 137-A (a) y 160, respectivamente, de la Ley Núm. 115 de 22 de julio de 1974, según enmendada; y agresión sexual conyugal, según tipificada en el Artículo 3.5 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada.

.    .    .    .    .    .    .    .    .

(iii) **Actos lascivos, cuando la víctima no ha cumplido los trece (13) años de edad**; secuestro de menores; secuestro agravado cuando la víctima fuere menor de dieciocho (18) años, según comprendidos en los Artículos 134, 144 y 170(a) de la Ley 149-2004, según enmendada. (Énfasis nuestro).

Con relación al caso que no ocupa, este Tribunal ha señalado que el Ofensor Sexual Tipo I se inscribirá únicamente **si su conducta constituyó abuso sexual**. *Pueblo v. Rodríguez Orengo*, *supra*. En el caso citado, acudimos a la definición de abuso sexual provista por la derogada, Ley Núm. 246-2011, según enmendada, Ley para la Seguridad, Bienestar y Protección de Menores (Ley Núm. 246-2011), 8 LPRA ant. sec. 1101 *et seq.*, la cual establecía que abuso sexual era:

[I]ncurrir en conducta sexual en presencia de un menor y/o que se utilice a un menor, voluntaria o involuntariamente, **para ejecutar conducta sexual que de procesarse por la vía criminal, configuraría cualesquiera de los siguientes delitos**: agresión sexual, **actos lascivos**, comercio de personas para actos sexuales, exposiciones obscenas, proposición obscena, producción de pornografía infantil, posesión y distribución de pornografía infantil, utilización de un menor para pornografía infantil; envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno y espectáculos obscenos según han sido tipificados en el Código Penal de Puerto Rico. (Énfasis nuestro). Artículo 3 (b)de la

> Ley Núm. 246-2011, 8 LPRA ant. sec. 1101 citada en *Pueblo v. Rodríguez Orengo*, *supra*, pág. 835.[12]

En suma, el Ofensor Sexual Tipo I incluye aquella persona que comete abuso sexual el cual, a su vez, implica incurrir en conducta que, de ser procesada por la vía criminal, constituiría, entre otros delitos, el de actos lascivos.

Por su parte, el Artículo 3 de la Ley Núm. 266-2004, 4 LPRA sec. 536a, enmendado por la Ley Núm. 243-2011, establece que los convictos contemplados dentro de estas clasificaciones deberán ser registrados. El término mínimo para el Ofensor Sexual Tipo I conlleva permanecer en el Registro por quince años, mientras que el Ofensor Sexual

---

[12] Ni la Ley Núm. 266-2004, según enmendada, conocida como la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, 4 LPRA sec. 536 *et seq.*, ni sus enmiendas mediante la Ley Núm. 243-2011, proveyeron una definición de abuso sexual para propósitos del Registro. Del mismo modo, el Código Penal de 2012 tampoco incorporó tal definición. Véase *Pueblo v. Rodríguez Orengo*, 213 DPR 821 (2024). Además, precisamos que, si bien es cierto que Ley Núm. 246-2011, según enmendada, Ley para la Seguridad, Bienestar y Protección de Menores, 8 LPRA ant. 1101 *et seq.*, era una Ley de menores, en *Pueblo v. Rodríguez Orengo*, *supra*, la controversia era si procedía la inscripción en el Registro de ofensores sexuales de una persona convicta por el delito de exposiciones obscenas, cuando de los hechos acontecidos no haya surgido el elemento constitutivo de acto o conducta sexual **contra la persona adulta**.

Por otro lado, la vigente Ley Núm. 57-2023, según enmendada, Ley para la Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores, en su Artículo 3 (b) establece que abuso sexual es:

> "Incurrir en conducta sexual en presencia de un menor o que se utilice a un menor, voluntaria o involuntariamente, **para ejecutar conducta sexual dirigida a satisfacer la lascivia o cualquier acto que, de procesarse por la vía criminal, configuraría cualesquiera de los siguientes delitos:** agresión sexual, **actos lascivos**, comercio de personas para actos sexuales, exposiciones obscenas, proposición obscena, producción de pornografía infantil, posesión y distribución de pornografía infantil, utilización de un menor para pornografía infantil; envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno y espectáculos obscenos según han sido tipificados en el Código Penal de Puerto Rico y otras leyes penales especiales". (Énfasis nuestro). 8 LPRA sec. 1643.

Tipo II deberá estar inscrito durante veinticinco años y el Ofensor Sexual Tipo III, durante toda la vida. Artículo 5 de la Ley Núm. 266-2004, 4 LPRA sec. 536c.

Otro elemento significativo de las enmiendas introducidas a la Ley Núm. 266-2004, *supra*, que resultaron de la Ley Núm. 243-2011, es la reinstauración de la distinción entre las personas que cumplen su sentencia en una institución correccional y aquellas que la cumplen en la libre comunidad. *Pueblo v. Ferrer Maldonado*, *supra*. Sobre la primera, la Ley dispone que el término comienza a correr "desde que el ofensor sexual sea excarcelado". Artículo 5 de la Ley Núm. 266-2004, *supra*. Por otro lado, en cuanto a la segunda, este se computa "**desde que se emite la sentencia, resolución o determinación para participar de [los] programas [de libertad a prueba, libertad bajo palabra o programas de desvío, tratamiento o rehabilitación], y se notifique su inclusión al Registro**". (Énfasis nuestro). *Íd*.

Cabe precisar que, a pesar de que dichas clasificaciones comprenden, en su mayoría, crímenes cuyas víctimas son menores de edad, **el propósito del Registro siempre ha sido proteger a las víctimas de delitos sexuales.**[13] *Pueblo v. Toro Vélez*, *supra*, (Opinión de conformidad del Juez Asociado señor Rivera García); *Placer Román v. ELA y otros*, *supra*, (Opinión concurrente del Juez Asociado señor Estrella Martínez). **A tales efectos, no puede interpretarse que el legislador tuvo**

---

[13] Para propósitos de la Ley Núm. 266-2004, un menor de edad es "toda persona que no haya cumplido los dieciocho (18) años de edad". Artículo 2 de la Ley Núm. 266-2004, *supra*.

**la intención de excluir a las víctimas adultas de esa**

**protección.** *Íd.*

Al respecto, el Artículo 3 de la Ley Núm. 266-2004, el cual quedó enmendado por el Artículo 2 de la Ley Núm. 243-2011, también dispone que serán registradas las siguientes personas:

> […]
> (b) Las personas que hayan sido o sean convictas por delitos similares, o sus tentativas o conspiraciones, a los enumerados en el *Artículo 2* de esta Ley por un tribunal federal, estatal, extranjero o militar, y se les haya garantizado el debido proceso de ley en el país que fueron convictos, que se trasladen a Puerto Rico para establecer su residencia, o que por razón de trabajo o estudio se encuentren en Puerto Rico, aunque su intención no sea la de establecer domicilio en la Isla.
> **(c) Las personas convictas que disfruten de libertad bajo palabra, condicionada, libertad a prueba, o algún método alterno de cumplimiento de la pena de reclusión, por alguno de los delitos o sus tentativas, según enumerados en el *Artículo 2* de esta Ley.**
> **(d) Las personas que al momento de la aprobación de esta Ley se encuentren recluidas o participando de algún programa de desvío, tratamiento o rehabilitación de la Administración de Corrección, o que posterior a la aprobación de esta Ley sean sometidos a dichos programas, por la comisión de alguno de los delitos enumerados o sus tentativas o conspiraciones en el *Artículo 2* de esta Ley.** Disponiéndose que en estos casos, una vez el acusado cumpla con las condiciones impuestas por el Tribunal, y éste ordene el sobreseimiento de la acción criminal, según lo disponen las leyes pertinentes a dichos programas, el Sistema eliminará la inscripción del acusado en el Registro aquí establecido.
> (e) Quedarán registradas las personas que al momento de la aprobación de esta Ley, tenían la obligación de registrarse bajo la Ley 28-1997, según enmendada.
> (f) Las personas que hayan sido convictas por cualquier delito de los enumerados en el Artículo 2 de esta Ley, que ya extinguieron la pena impuesta y no se encuentren registrados ni cumpliendo pena alguna por dichos delitos, si resultan convictas por la comisión de cualquier delito grave que no sea un delito sexual de los enumerados en el *Artículo 2* de esta Ley. No obstante, en estos casos, se acreditará para efectos de la duración de la inscripción en el Registro, el tiempo transcurrido desde el cumplimiento de su sentencia, o método alterno de cumplimiento de la pena de reclusión, hasta su inclusión en el Registro aquí establecido.
> **(g) Las personas que hayan sido convictas por cualquiera de los delitos enumerados en el *Artículo 2* de esta Ley y hagan alegación de culpabilidad por cualquiera de los delitos o sus tentativas o conspiración. En estos casos será compulsorio y no objeto de alegaciones pre-acordadas, el ingreso de la persona convicta al Registro.**
> (Énfasis nuestro). 4 LPRA sec. 536a.

En atención a lo anterior, se colige que son varias las personas obligadas a inscribirse en el Registro. **Entre estas, aquellas que comprenden las definiciones de Ofensores Sexuales Tipo I, los Ofensores Sexuales Tipo II y los Ofensores Sexuales Tipo III. También, la ley exige que se incluyan en el Registro las personas convictas por los delitos enumerados en el Artículo 2 de la Ley Núm. 266-2004,** *supra*.

Para propósitos de la Ley Núm. 266-2004, *supra*, se considera convicto toda aquella persona que resulte culpable de cometer algún delito establecido en dicha legislación, sus tentativas o conspiraciones, según establecidos en dicha Ley. Artículo 2 de la Ley Núm. 266-2004, *supra*. Además, la definición de convicto incluye a toda persona que disfrute de libertad bajo palabra, condicionada, libertad a prueba o algún método de cumplimiento alterno de la pena de reclusión, por los delitos -incluyendo sus tentativas o conspiraciones- establecidas en la Ley Núm. 266-2004, *supra*.

En cuanto a los delitos incluidos en el Artículo 2 de la Ley Núm. 266-2004, *supra*, los cuales requieren el registro de la persona que los cometa, se encuentran los siguientes:

> **(3) "Delito Sexual" — En general, excepto por lo dispuesto en los sub-incisos (a) y (b), incluye lo siguiente:**
>
> **(i) un delito que tenga como elemento constitutivo un acto sexual o conducta sexual con otra persona;**
> (ii) un delito específico contra un menor de edad;
> . . . . . . . .
> (vi) una tentativa o conspiración para cometer cualquier delito descrito en los sub-incisos (i) al (v) de este inciso.
> . . . . . . . .
> (b) Un delito que incluya conducta sexual consentida no es un delito sexual para propósitos de esta Ley, si la

víctima es un adulto, a menos que dicho adulto esté bajo la custodia legítima del ofensor al momento del delito. (Énfasis nuestro).

La definición de delito sexual, "procura reafirmar que, para propósitos de la inscripción de una persona convicta en el Registro, se requiere que el delito cometido contenga hechos que configuren un elemento constitutivo de un acto o una conducta sexual con otra persona". *Pueblo v. Rodríguez Orengo*, *supra*, pág. 830. Se trata de delitos que deben estar tipificados en legislación de índole penal. *National Guidelines*, pág. 7. Véase, además, *Pueblo v. Rodríguez Orengo*, *supra*, pág. 830. Según las *National Guidelines*, los delitos sexuales incluidos en dicha definición deben envolver los siguientes elementos:"(i) any type or degree of genital, oral, or anal penetration, or (ii) **any sexual touching of or contact with a person's body, either directly or through the clothing.**" *National Guidelines*, pág. 17.

Además, es preciso mencionar que la definición de delito sexual —que abarca aquellos delitos cuyo elemento constitutivo es un acto sexual o una conducta sexual con otra persona— incluye a las víctimas adultas, salvo cuando la conducta haya sido consentida y el adulto no se encontrara bajo la custodia legítima del ofensor. Véase Artículo 2 de la Ley Núm. 266-2004, *supra*. De hecho, nótese que dicha definición contempla expresamente el delito sexual cometido contra un menor de edad.

Ahora bien, corresponde preguntarse si el delito de actos lascivos tipificado en el Código Penal de 1974

constituye un delito sexual para efectos de la Ley Núm. 266-2004, *supra*.

El Artículo 105 de la Ley Núm. 115 de 22 de julio de 1974, según enmendada, conocida como Código Penal de 1974, tipificaba el delito de actos lascivos o impúdicos. En específico, el referido artículo disponía:

> Toda persona que sin intentar consumar acceso carnal cometiere cualquier acto impúdico o lascivo con otra será sancionada con pena de reclusión según más adelante se dispone si concurrieran cualesquiera de las siguientes modalidades:
>
> (a) Si la víctima fuere menor de 14 años.
> (b) Si la víctima ha sido compelida al acto mediante el empleo de fuerza física irresistible o amenaza de grave e inmediato daño corporal, acompañada de la aparente aptitud para realizarlo, o anulando o disminuyendo sustancialmente, sin su conocimiento, su capacidad de resistencia a través de medios hipnóticos, narcóticos, deprimentes o estimulantes o sustancias o medios similares.
> (c) Si la víctima, por enfermedad o defecto mental temporero o permanente, estuviere incapacitada para consentir legalmente.
> (d) Si la víctima fuere compelida al acto mediante el empleo de medios engañosos que anulen o disminuyan sustancialmente, sin su conocimiento, su capacidad de resistencia.
> (e) Si la víctima es su ascendiente o descendiente en todos los grados o su colateral por consanguinidad hasta el tercer grado tanto de vínculo doble como sencillo e incluyendo la relación de padres, hijos o hermanos por adopción.
> […]. 33 LPRA ant. sec. 4067.

El acto lascivo o impúdico "es aquel que tiende a despertar, excitar o satisfacer la impudicia, la pasión o los deseos sexuales del sujeto activo". *Pueblo v. Lugo Fabre*, 179 DPR 125, 135 (2010) (Sentencia) citando a D. Nevares-Muñiz, *Código Penal de Puerto Rico*, 6ta ed., San Juan, Inst. para el Desarrollo del Derecho, Inc., 2000, pág. 207. Constituye un delito que ofende el pudor e indemnidad sexual de la víctima, pero se realiza sin la intención de consumar la penetración sexual. *Pueblo v. Lugo Fabre*, *supra*. Obsérvese

que **el acto lascivo "puede consistir en el contacto con el cuerpo de la víctima** u obligar o inducir a ésta a realizar actos sobre la persona del imputado para excitar o satisfacer los deseos sexuales de éste". *Íd*., pág. 236.

Entonces, **lo anterior nos permite concluir que las personas convictas por actos lascivos o impúdicos contra adultos se encuentran incluidas en el Artículo 2 de la Ley Núm. 266-2004,** *supra*, **y, por tanto, están obligadas a registrarse.** Este es un delito sexual tipificado por nuestro ordenamiento jurídico que implica una conducta sexual, mediante la cual el ofensor sexual busca satisfacer la lascivia a través del contacto con la víctima o mediante la obligación o inducción de esta a realizar actos sobre la persona del ofensor.

De igual modo, no podemos perder de perspectiva que los convictos por actos lascivos han estado sujetos a dicha obligación desde la creación del Registro en el 1997. En consecuencia, la aprobación de la Ley Núm. 243-2011 no alteró tal deber de inscripción. Véase *Pueblo v. Toro Vélez*, *supra*, (Opinión de conformidad del Juez Asociado señor Rivera García); *Placer Román v. ELA y otros*, *supra*, (Opinión de concurrente del Juez Asociado señor Estrella Martínez). Ello, a su vez, es cónsono con la política pública de proteger a todos los sectores de la sociedad de delitos sexuales.

**D. Retroactividad de la Ley Núm. 243-2011**

En *Pueblo v. Ferrer Maldonado*, este Tribunal resolvió que "la aplicación retroactiva de las enmiendas introducidas por la Ley Núm. 243-2011 a la Ley Núm. 266-2004 no violan la prohibición constitucional en contra de la aplicación de leyes *ex post facto*". *Pueblo v. Ferrer Maldonado*, *supra*, pág. 999. Dicha interpretación responde a la naturaleza civil, y no punitiva, de la Ley Núm. 266-2004, *supra*, y las enmiendas introducidas por la Ley Núm. 243-2011. *Íd*. Por tanto, sostuvimos que "todas las disposiciones contenidas en las enmiendas introducidas por la Ley Núm. 243-2011 aplican de forma retroactiva, independientemente de si la persona que impugna su anotación en el Registro arguye que, en su situación particular, corresponde emplear el principio de favorabilidad." *Íd*., pág. 999.

## III

En el caso ante nuestra consideración, el peticionario sostiene que las enmiendas introducidas a la Ley Núm. 266-2004, *supra*, mediante la Ley Núm. 243-2011, no incluyen el delito de actos lascivos contra una persona mayor de edad entre aquellos que activan la obligación de inscribir al convicto en el Registro. Además, apunta que ya cumplió con el término de diez años impuesto por la Ley aplicable a su caso. Por su parte, el Procurador General señala que el delito de actos lascivos cuando la víctima es un adulto está incluido dentro de la clase de Ofensor Sexual Tipo II de la Ley Núm. 266-2004, *supra*.

Como surge del derecho antes consignado, en virtud de nuestra determinación en el caso *Pueblo v. Ferrer Maldonado*, *supra*, las disposiciones de la Ley Núm. 243-2011 se aplican de manera retroactiva. En consecuencia, la Ley Núm. 266-2004, *supra*, enmendada por la Ley Núm. 243-2011, constituye la legislación aplicable al caso de epígrafe.

Dicho esto, corresponde determinar si, conforme a las enmiendas introducidas a la Ley Núm. 266-2004, *supra*, una persona convicta por el delito de actos lascivos contra un adulto debe ser registrada como ofensor sexual bajo alguna de las categorías previstas en dicha legislación. Luego de su análisis, sostengo que dichas personas deben inscribirse como Ofensor Sexual Tipo I. Veamos.

Según el Ministerio Público, el delito de actos lascivos sin minoridad está incluido en la definición del Ofensor Sexual Tipo II. A su juicio, la inclusión de la conjunción "o", en lugar de la conjunción "y", denota la intención legislativa de separar a quienes cometen los delitos enumerados en la definición de Ofensores Sexuales Tipo II, de los que resultan convictos por su tentativa o conspiración, para los que se requiere que la víctima sea menor de edad. En específico, el Artículo 5 (9) establece que las "[p]ersonas que resulten convictas por los siguientes delitos o su tentativa o conspiración cuando la víctima fuere un menor de edad: (i) Actos lascivos o impúdicos [...].

No podemos avalar la postura del Procurador. La conjunción copulativa "y" se utiliza para conectar

expresiones, por lo que todas las instancias deberán estar conectadas para que la norma aplique. J. Farinacci Fernós, Hermeneútica puertorriqueña: *Cánones de interpretación jurídica,* San Juan, Editorial InterJuris, 2019, pág. 117. Por otro lado, la conjunción "o" es una conjunción disyuntiva que denota separación. Por lo tanto, será suficiente que ocurra una de las instancias para que la norma aplique. *Íd.* No obstante, **la conjunción disyuntiva "o" también puede significar alternativa**, cosas o ideas. *Morales et als. v. Marengo et al.,* 181 DPR 852, 862 (2011). "**[A]mbas 'son de significado intercambiable y que si la legislación usa una de ellas y la intención evidente es la de que se debió usar la otra, se sustituye una por la otra´**" *Pueblo v. Villafane, Contreras,* 139 DPR 134, 145 (1995).

Por tanto, la intención legislativa detrás de la conjunción "o" en la definición de Ofensor Sexual Tipo II era indicar que el elemento de la minoridad es necesario en las instancias en donde el ofensor resulta convicto por los delitos allí enumerados o, **en la alternativa**, cuando se hayan materializado sus respectivas tentativas o conspiraciones. Esta interpretación se ajusta a la definición del Ofensor Sexual Tipo II establecida en la Ley SORNA, la cual dispone que este: "is comparable to or more severe **than the following offenses, when committed against a minor, or** an attempt **or** conspiracy to commit such an offense **against a minor.**" 34 USC sec. 20911. De lo contrario, resultaría improcedente utilizar la conjunción "y", pues no se puede encontrar

culpable a una persona de cometer un delito y, a su vez, cometer su tentativa.

Por otro lado, tampoco es posible acoger el razonamiento del Tribunal de Apelaciones de que el peticionario es un Ofensor Sexual Tipo III. La Ley 266-2004, *supra*, establece que será un Ofensor Sexual Tipo III la persona que resulte convicta por actos lascivos **cuando la víctima no ha cumplido los dieciséis años o cuando la víctima no ha cumplido los trece años.** Por ende, surge expresamente de dicha definición que solo incluye el delito de actos lascivos cuando la víctima es menor de edad. En este extremo, la Ley es clara y libre de toda ambigüedad, por lo que, de acuerdo con el principio de hermenéutica, no debemos menospreciarla bajo el pretexto de cumplir su espíritu. *Vázquez et al. v. DACo*, 2025 TSPR 56, 216 DPR __ (2025).

En esa línea, si bien es cierto que los hechos repudiables imputados contra el peticionario involucraban a una víctima menor de catorce años, **este se declaró culpable y fue convicto por el delito de actos lascivos sin el elemento de minoridad.** El peticionario descansó y confió en el preacuerdo alcanzado con el Ministerio Público.

Aclarado lo anterior, pasemos a discutir las razones por las cuales el peticionario cumple con la definición de Ofensor Sexual Tipo I.

Con relación al delito que generó la controversia del caso que no ocupa, la Ley 266-2004, *supra*, dispone que, si la víctima del delito es menor de edad, pero no menor de

dieciséis años, el convicto será un Ofensor Sexual Tipo II. Si la víctima no ha cumplido los dieciséis años, el convicto será registrado como un Ofensor Sexual Tipo III. Ciertamente, la Ley no establece expresamente cómo debe ser registrado el convicto del delito de actos lascivos cuando la víctima es mayor de edad.

Sin embargo, como discutí previamente, **el estándar mínimo que requiere la Ley SORNA para el Ofensor Sexual Tipo I o "Tier I sex offender" es aquel que no sea un Ofensor Sexual Tipo II o Tipo III.** En otras palabras, **se trata de una categoría residual que incluye a aquellos ofensores sexuales que no cumplen con los criterios para las categorías II y III.**

Conforme a la Ley Núm. 266-2004, *supra*, un ofensor sexual es aquel que **resulta convicto de cometer un delito sexual.** Así, el delito sexual incluye aquel que tenga como elemento constitutivo un acto sexual o conducta sexual **con otra persona**, es decir, sin distinción de edad. En ese sentido, el delito de actos lascivos cometido contra una persona mayor de edad se ajusta a la definición de "delito sexual" provista en el Artículo 2 de la Ley Núm. 266-2004, *supra*, toda vez que, como mencionamos previamente, implica una conducta sexual con otra persona en la que el ofensor busca satisfacer su lascivia mediante el contacto con la víctima o mediante la obligación o inducción de esta a realizar actos sobre la persona del ofensor. **Asimismo, dicha legislación exige el registro de cualquier persona que haya**

**cometido un delito sexual. Incluso, al configurarse el delito sexual de actos lascivos, también se incurre en conducta de abuso sexual, lo cual constituye un cumplimiento con el requisito para la inscripción de un convicto como Ofensor Sexual Tipo I.[14]**

En consecuencia, el delito de actos lascivos o impúdicos cometidos contra personas mayores de edad se enmarca en el estándar mínimo de la definición "Tier I sex offender" que exige la Ley SORNA, pues cumple con la definición de "delito sexual" del Articulo 2 de la Ley Num. 266-2004, *supra*, lo que a su vez lo hace constitutivo de abuso sexual según lo hemos definido para el Ofensor Sexual Tipo I de dicha legislación. De hecho, el Departamento de Justicia federal ha interpretado que cuando la víctima del delito de actos lascivos es mayor de dieciocho años, el convicto debe ser registrado como Ofensor Sexual Tipo I.[15] Lo anterior también

---

[14] Véase definición de abuso sexual de la Ley Núm. 246-2011, según enmendada, Ley para la Seguridad, Bienestar y Protección de Menores, 8 LPRA ant. sec. 1101 *et seq.*

[15] En enero de 2016, la Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART) del Departamento de Justicia federal publicó el *SORNA Implementation Review Territory of Puerto Rico*. En lo concerniente al caso que nos ocupa, el documento establece lo siguiente:

> "SORNA requires that Tier II offenders register for a minimum of 25 years and semiannually verify registration information. **The following offenses listed in Puerto Rico's statutes would require, at a minimum, Tier II registration requirements under SORNA.**
>
> $105 (1974)      33 L.P.R.A. $4067      Lewd and Indecent Acts (victim 16 or older)
>
> **This will be a tier I offense when the victim is 18 or older,** and a tier II offense when the victim is 16 or 17
>
> $111(a) (1974)   33 L.P.R.A. $4073(a)   Pimping   (minor victim)

es cónsono con el fin protector que persigue la Ley Núm. 266-2004, *supra*.

Por consiguiente, al peticionario cumplir con la definición del Ofensor Sexual Tipo I, este se encontraba obligado a permanecer en el Registro por el término de quince años que establece la Ley Núm. 266-2004, *supra*.[16] El 7 de julio de 2006, el Tribunal de Primera Instancia dictó sentencia en su contra para ser cumplida de forma concurrente mediante el beneficio de sentencia suspendida. Conforme establece la Ley Núm. 266-2004, *supra*, su término para permanecer en el Registro comenzó a contar desde que se emitió dicha sentencia. De este modo, el tiempo de inscripción del peticionario como Ofensor Sexual Tipo I se cumplió el 7 de julio de 2021.

**IV**

Por los fundamentos antes expuestos, concluyo que las personas convictas por el delito de actos lascivos o impúdicos cometidos contra un adulto quedan incluidas bajo la

---

§142(f) (2004)   33 L.P.R.A. §4770(f)   Sexual   Assault (deception)

§142(h) (2004)   33 L.P.R.A. §4770(h)   Sexual   Assault (incest)

§142(i) (2004)   33 L.P.R.A. §4770(i)   Sexual   Assault (trust relationship)

**§144   (2004)   33 L.P.R.A. §4772   Lewd   Acts"** (Énfasis Nuestro). *SORNA Implementation Review Territory of Puerto Rico—Revised*, enero de 2016, https://smart.ojp.gov/sorna/sorna-implementation-status, págs. 8-11.

[16] Aclaro que, si peticionario hubiera resultado convicto por los actos cometidos contra una menor de catorce años, este estaría obligado a inscribirse como Ofensor Sexual Tipo III.

definición de Ofensor Sexual Tipo I de la Ley Núm. 266-2004, *supra*. Por lo tanto, el peticionario debía permanecer inscrito en el Registro por el término de quince años dispuesto por Ley, término que ya cumplió. Por lo cual, procede la eliminación de toda su información del *Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores*.

Camille Rivera Pérez
Jueza Asociada